RAFKIN ESQ., PLLC
SETH A. RAFKIN (199166)
(srafkin@rafkinesq.com)
JENNIFER M. BOGUE (259431)
(jbogue@rafkinesq.com)
1201 SUSSEX TURNPIKE, SUITE 102
RANDOLPH, NJ 07869
Telephone: (973) 891-3370
Facsimile: (973) 920-9727

Attorneys for PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

No. ____________________

ROBERT LOITMAN,

Plaintiff,

v.

EVOLUTION METALS, LLC, DAVID WILCOX, and DOES 1-10,

Defendants.

**COMPLAINT**
(Jury Trial Demanded)

Plaintiff ROBERT LOITMAN, as a complaint against EVOLUTION METALS, LLC, DAVID WILCOX, and DOES 1-10, alleges and states the following:

**NATURE OF THE CASE**

1. Plaintiff ROBERT LOITMAN brings this case pursuant to this Court's diversity jurisdiction against his former employer EVOLUTION METALS, LLC and its managing member, DAVID WILCOX. Plaintiff asserts claims for relief for: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) promissory estoppel.

**PARTIES**

2. Plaintiff ROBERRT LOITMAN is a resident of the State of California. He is an experienced financial professional.

3. Defendant EVOLUTION METALS, LLC is a company focused on building supply chains for materials used in numerous industries including aerospace, electronics, automotive, defense and healthcare.

4. Defendant DAVID WILCOX is the managing member of EVOLUTION METALS, LLC.

5. The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such defendants under fictitious names. Plaintiff is informed and believes, and thereon alleges, that each defendant designated as a DOE is responsible in some manner for the events in this Complaint. Plaintiff will seek leave of the Court to amend this Complaint to allege their true names and capacities when ascertained.

**JURISDICTION AND VENUE**

6. Subject matter jurisdiction over this matter is conferred upon and vested in this Court under 28 U.S.C. § 1332 because the requisites for diversity jurisdiction are met.

7. The parties are citizens of different states.

a. Plaintiff LOITMAN is, and at all times relevant hereto was, a citizen of the State of California.

b. Defendant EVOLUTION METALS, LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business in West Palm Beach, Florida.

c. Defendant DAVID WILCOX is, and at all times relevant hereto was, a citizen of the State of Florida.

8. The amount in controversy exceeds $75,000 exclusive of fees and costs. Among other things, Plaintiff LOITMAN seeks compensatory damages related to promises of $700,000 in

compensation, an equity grant valued at $5,000,000 and losses incurred by the shuttering of Plaintiff's consultancy at the demand of Defendants.

9. This Court has personal jurisdiction over Defendant EVOLUTION METALS, LLC as the case arises out of an agreement entered into in this District with a citizen of the State of California. This Court has personal jurisdiction over Defendant DAVID WILCOX as the case arises out of promises made by WILCOX to a citizen of the State of California.

10. Venue is proper in this Court as a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

11. In 2024, Plaintiff LOITMAN was running his consulting firm, L&O Consulting, which had been up and running for several years. A seasoned financial professional, LOITMAN's firm took on assignments from a range of clients seeking his guidance on various financial matters. His consultancy was thriving and he was earning a good living.

12. In the summer of 2024, Plaintiff was contacted by Defendant EVOLUTION METALS, LLC ("EM"), through a mutual acquaintance. EM explained to Plaintiff that it was interested in hiring him as its Chief Financial Officer. EM's interest in Plaintiff was understandable. He is a graduate of both Harvard and the University of Chicago business school and has substantial experience. Plaintiff was introduced to Defendant WILCOX, who was and remains the managing member of EM.

13. Over the course of several weeks, Plaintiff met, spoke and otherwise communicated with WILCOX. WILCOX explained that EM was embarking on merger with a company known as Welsbach Technologies Metal Acquisition Corp. ("WTMA"). EM wanted to hire Plaintiff as its Chief Financial Officer. Specifically, EM wanted Plaintiff to manage the preparation and audit work of EM's nine subsidiaries in the run up to the merger with WTMA. EM

also wanted Plaintiff to be the point of contact between all audit and accounting service providers and the Chief Financial Officers of the nine subsidiary companies.

14. Moreover, WILCOX explained that not only would Plaintiff serve as the Chief Financial Officer for EM, he would also serve in that role for the merged company, with a large compensation package. On August 24, 2024, WILCOX presented Plaintiff with a letter agreement signed by WILCOX (the "Letter Agreement"). Plaintiff signed it on August 25, 2024. Among other things, WILCOX stated the following in the Letter Agreement:

a. "I am pleased to confirm your position as Chief Financial Officer of EM starting on 9 September 2024."

b. "Your responsibilities as CFO of EM are to assist in accounting preparation and audit work of all nine companies connected with the deSPAC [merger] and liaising with all audit and accounting service providers and CFOs of these nine companies."

c. "Additionally, I want to confirm your position as CFO of EM&T [the merged company] pursuant to the closing of the deSPAC merger."

d. "Your expected compensation package as the CFO of EM&T is a one-time award of $5,000,000 (five million dollars) in shares of EM&T, a base salary floor of $700,000 (seven hundred thousand dollars) per annum, plus [additional benefits].

A true and correct copy of the Letter Agreement is attached as Exhibit A hereto.

15. The Letter Agreement also provides that in order to receive the position and compensation with the merged company, Plaintiff needed to perform as the Chief Financial Officer of EM, that the investors had to agree to the merger and that the merger close.

16. WILCOX told Plaintiff that in order to move forward with his position at EM, he would need to close down his consulting firm. In compliance, Plaintiff closed his consultancy.

17. Pursuant to the Letter Agreement, Plaintiff began working for EM as its Chief Financial Officer on September 9, 2024. The merger agreement between EM and WTMA was entered into on November 6, 2024 with an anticipated closing date of March 14, 2025.

18. Plaintiff set about performing his duties and for four months performed admirably. He received no negative feedback or review. Indeed, to the contrary, he was repeatedly advised that he was performing well.

19. Yet, on January 8, 2025, EM suddenly advised Plaintiff that he was being terminated effective immediately. He was told only that the unidentified "bankers" decided not to move forward with him. Tellingly, EM then tried to get Plaintiff to enter into an "Amended & Restated" Letter Agreement. This new agreement sought to change key language. In the original Letter Agreement WILCOX states point blank: "I want to **confirm your *position*** as CFO of EM&T pursuant to the closing of the deSPAC merger." (Emphasis added.) The Amended & Restated Letter Agreement that WILCOX then tried to foist on Plaintiff changed that sentence to: "I want to confirm your ***candidacy*** as CFO of EM&T pursuant to the closing of the deSPAC merger" and sought to have Plaintiff release all claims. (Emphasis added.). Understandably, Plaintiff refused to execute the Amended & Restated Agreement.

20. The reason for WILCOX's attempt to change the terms of the Letter Agreement is obvious. Plaintiff had been promised the position with the merged company along with substantial compensation. The only thing left was for the merger to close. Plaintiff had already performed as CFO of EM and the investors had already agreed to the merger, the merger agreement had been entered into and a closing date is just weeks away.

**<u>FIRST CLAIM FOR RELIEF</u>**
**(Breach of Contract Against EM)**

21. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as if fully set forth herein.

22. EM entered into the Letter Agreement with Plaintiff.

23. Plaintiff performed all of his obligations under the Letter Agreement except to the extent he has been prevented from doing so by EM.

24. EM breached the Letter Agreement by terminating Plaintiff from his position as Chief Financial Officer of EM.

25. Plaintiff has been damaged because he is losing the compensation he was promised until the time of the merger's closing and the compensation and equity he would have enjoyed as the Chief Financial Officer of the merged entity, a position that already been "confirmed" by EM.

**SECOND CLAIM FOR RELIEF**

**(Breach of the Implied Covenant of Good Faith & Fair Dealing Against EM)**

26. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as if fully set forth herein.

27. EM entered into the Letter Agreement with Plaintiff.

28. Plaintiff performed all of his obligations under the Letter Agreement except to the extent he has been prevented from doing so by EM.

29. There is in all contracts entered into in the State of California an implied covenant of good faith and fair dealing. The implied covenant makes it unlawful for a party to an agreement to take actions designed, among other things, to deprive the other party of the benefit of the bargain.

30. EM breached the implied covenant by terminating Plaintiff from his position as Chief Financial Officer of EM prior to the close of the merger.

31. EM also breached the implied covenant by failing to take steps to ensure that Plaintiff would not be so terminated and that all steps required to ensure that he be placed in his "confirmed" position of Chief Financial Officer of the merged company and receive the substantial compensation promised him would be taken.

32. Plaintiff has been damaged because he is losing the compensation he was promised until the time of the merger's closing and the compensation and equity he would have enjoyed as the Chief Financial Officer of the merged entity, a position that already been "confirmed" by EM.

**THIRD CLAIM FOR RELIEF**
**(Promissory Estoppel Against EM)**

33. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as if fully set forth herein.

34. EM made promises to Plaintiff as set forth hereinabove.

35. EM made the promises for the purpose of inducing Plaintiff to close his consultancy and work for it as its Chief Financial Officer and later in the same position for the merged entity.

36. Relying on EM's promise, Plaintiff closed his consultancy and has earned no income from it since approximately September 2024.

37. Plaintiff's reliance was imminently foreseeable as it was precisely what EM asked him to do.

38. Plaintiff has and will be damaged in an amount to be proven at trial but in excess of $250,000.

**FOURTH CLAIM FOR RELIEF**
**(Promissory Estoppel Against WILCOX)**

39. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as if fully set forth herein.

40. WILCOX made promises to Plaintiff as set forth hereinabove.

41. WILCOX made the promises for the purpose of inducing Plaintiff to close his consultancy and work for it as its Chief Financial Officer and later in the same position for the merged entity.

42. Relying on WILCOX's promise, Plaintiff closed his consultancy and has earned no income from it since approximately September 2024.

43. Plaintiff's reliance was imminently foreseeable as it was precisely what WILCOX asked him to do.

44. Plaintiff has and will be damaged in an amount to be proven at trial but in excess of $250,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court for the following relief:

a. Economic damages for past and future lost compensation, including the value of salary, equity awards and benefits in an amount to be proven at trial;

b. Economic damages for the past and future loss of earnings from Plaintiff's consultancy;

c. Prejudgment interest; and

d. For such other relief as the Court may deem just and proper.

**JURY DEMAND**

PLAINTIFF DEMANDS A TRIAL BY JURY.

Executed this 12th day of March 2025.

By: [signature]

SETH A. RAFKIN (199166)
(srafkin@rafkinesq.com)
JENNIFER M. BOGUE (259431)
(jbogue@rafkinesq.com)
**RAFKIN ESQ., PLLC**
1201 SUSSEX TURNPIKE, SUITE 102
RANDOLPH, NJ 07869
Telephone: (973) 891-3370
Facsimile: (973) 920-9727

*Attorneys for Plaintiff*